01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
07                                    AT SEATTLE

08   ROSEMARY MAY OKERE,                    )   CASE NO. C07-1267-RAJ
                                            )
09           Petitioner,                    )
                                            )
10       v.                                 )   REPORT AND RECOMMENDATION
                                            )
11   MICHAEL CHERTOFF, et al.,              )
                                            )
12           Respondents.                   )
     _____ )

13

14                  I.  INTRODUCTION AND SUMMARY CONCLUSION

15       Petitioner Rosemary May Okere, proceeding through counsel, has filed a Petition for Writ

16   of Habeas Corpus pursuant to 28 U.S.C. § 2241, arguing that her continued detention by the U.S.

17   Immigration and Customs Enforcement ("ICE") violates the equal protection clause of the United

18   States Constitution because she suffers from acute medical problems.[1]  (Dkt. #1 at 2).  Petitioner

19

20       [1] This is the second habeas petition petitioner has filed in this Court.  On July 28, 2006, the
     Honorable Robert S. Lasnik, Chief United States District Judge, denied her first habeas petition.
21   *See Okere v. Gonzales*, C06-292-RSL (Dkt. #21).  Petitioner subsequently filed a Petition for
     Review of the denial of her habeas petition in the Ninth Circuit Court of Appeals.  On March 5,
22   2007, the Ninth Circuit affirmed in part and dismissed in part the petition for review, and the
     mandate issued on July 19, 2007.  See *Okere v. Gonzales*, No. 06-35710 (9th Cir. 2006).

     REPORT AND RECOMMENDATION
     PAGE -1

01 asserts that she suffers from high blood pressure, anxiety, post traumatic stress disorder, and

02 anemia, and that she "deserves a change in situation on account of her deteriorating health

03 condition." (Dkt. #22 at 2). The Government argues that petitioner's health does not require her

04 release because she is receiving appropriate medical treatment and has declined to take advantage

05 of some medical treatment available to her. (Dkt. #18 at 1-2).

06 After careful review of the entire record, I recommend that petitioner's habeas petition be

07 denied and that this action be dismissed with prejudice.

08 II.  FACTS

09 Petitioner is a native and citizen of Nigeria who was admitted to the United States on May

10 8, 1995, as a B-2 visitor with authorization to remain in the United States until December 7, 1995.

11 (*Okere v. Gonzales* , C06-0292-RSL-JPD, Dkt. #15 at R108, L518).  On March 15, 1996,

12 petitioner filed an application for asylum. (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at R1-10).  On

13 October 31, 2000, an asylum officer conducted an interview of petitioner and determined that she

14 was not eligible for asylum and referred her case to an Immigration Judge ("IJ") for review.

15 (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L23-24).  On November 1, 2000, the former

16 Immigration and Naturalization Service[2] ("INS") issued a Notice to Appear, placing petitioner in

17 removal proceedings and charging her with removability under Section 237(a)(1)(b) of the

18 Immigration and Nationality Act ("INA") for remaining in the United States longer than permitted.

19 (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L428-29).

20

---

21

22 [2] Effective March 1, 2003, the Immigration and Naturalization Service was abolished pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, *codified at* 6 U.S.C. § § 101, *et seq.*, and its immigration functions were transferred to the Department of Homeland Security ("DHS").

REPORT AND RECOMMENDATION
PAGE -2

01  In removal proceedings, petitioner, proceeding through counsel, admitted the allegations

02  contained in the Notice to Appear and conceded removability, but applied for asylum, withholding

03  of removal, and withholding under the Convention Against Torture ("CAT").  (*Okere*, C06-0292-

04  RSL-JPD, Dkt. #15 at L428).  On October 8, 2002, the IJ denied petitioner's application for relief,

05  and ordered her removed to Nigeria. ( *Okere*, C06-0292-RSL-JPD, Dkt. #15 at L393-429).

06  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  (*Okere*, C06-

07  0292-RSL-JPD, Dkt. #15 at L1004-1006, L629).

08  On January 26, 2003, petitioner married Shune Arnold, a United States citizen.  On March

09  17, 2003, petitioner filed a motion with the BIA to reopen and remand her removal proceedings

10  to the Immigration Court so that she could apply for adjustment of status based on her marriage

11  to a United States citizen.[3]  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L880-81, L619).

12  On March 25, 2003, the BIA issued a briefing schedule, indicating that petitioner's appeal

13  brief must be received no later than April 15, 2003.  ( *Okere*, C06-0292-RSL-JPD, Dkt. #15 at

14  L629).  On April 8, 2003, petitioner's counsel filed a request for an extension of time to file an

15  appeal brief.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L631).  The BIA granted petitioner until

16  May 6, 2003, to file her appeal brief.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L634-35).  On

17  or about July 30, 2003, petitioner's counsel submitted an appeal brief to the BIA along with a

18  motion for consideration of the late filed brief.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L642-

19

20  [3] On February 23, 2004, Mr. Arnold, filed a Petition for Dissolution of Marriage in the Superior Court of Washington for Pierce County. ( *Okere*, C06-0292-RSL-JPD, Dkt. #15 at L1187-1196). On October 5, 2005, DHS received a letter from Mr. Arnold, claiming that his

21  marriage to Ms. Okere was a "fake" for "Immigration only," and that he wanted to withdraw his I-130 relative immigrant visa petition. (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L1033). Mr.

22  Arnold indicated that he had moved to California after filing the Petition for Dissolution of Marriage and never completed the dissolution. (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L1033).

REPORT AND RECOMMENDATION
PAGE -3

01 651).

02        On March 22, 2004, the BIA dismissed petitioner's appeal for failing to file a timely appeal

03 brief. ( *Okere*, C06-0292-RSL-JPD, Dkt. #15 at L880-81).   In addition, the BIA denied

04 petitioner's motion to reopen and remand, finding that petitioner  had failed to provide sufficient

05 evidence of the bona fides of her marriage. *Id*.  On May 20, 2004, however, the BIA reopened

06 the proceedings and remanded the case to the IJ for consideration of petitioner's application for

07 adjustment of status. (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L735).

08        On June 7, 2004, petitioner filed a motion to change venue from Dallas, Texas to Seattle,

09 Washington, which the IJ denied.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L1132-34).  On June

10 28, 2004, petitioner failed to appear for her scheduled hearing and the IJ ordered her removed *in*

11 *absentia.*[4]  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L777, L775).  Petitioner appealed the IJ's

12 decision to the BIA, who affirmed the IJ's decision on March 10, 2005. (*Okere*, C06-0292-RSL-

13 JPD, Dkt. #15 at L819).

14        On June 7, 2005, petitioner, proceeding pro se, filed a motion to reopen and reconsider

15 the BIA's March 10, 2005, decision based on ineffective assistance of counsel. (*Okere*, C06-

16 0292-RSL-JPD, Dkt. #15 at L839-842).  Petitioner alleged that she was unaware that the initial

17 appeal to the BIA was dismissed for failure to file an appeal brief, and was unaware of the June

18 _____

19 [4] The IJ stated as follows:

20 At a prior hearing the respondent admitted the factual allegations in the Notice to Appear
and conceded removability. I find removability established as charged. . . . I further find
that the respondent's failure to appear and proceed with any applications for relief from
21 removal constitutes an abandonment of any pending applications and any applications the
respondent may have been eligible to file.

22

(Dkt. #15 at L777, L775).

REPORT AND RECOMMENDATION
PAGE -4

01  28, 2004, immigration hearing until she arrived at her attorney's office on the morning of the

02  hearing.  Petitioner further alleged that she had filed a grievance with the Washington State Bar

03  Association against her former attorney.  *Id.*  On August 1, 2005, the BIA denied petitioner's

04  motion to reopen and reconsider as untimely.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at L861).

05       On August 29, 2005, ICE issued a "Bag and Baggage" letter (surrender notice), directing

06  petitioner to report for removal to Nigeria on September 28, 2005.  (*Okere*, C06-0292-RSL-JPD,

07  Dkt. #15 at R86).  On September 7, 2005, petitioner filed an Application for Stay of Removal,

08  stating that she had filed a Petition for Review in the Fifth Circuit Court of Appeals.  (*Okere*, C06-

09  0292-RSL-JPD, Dkt. #15 at R85).  On September 28, 2005, petitioner reported for removal and

10  was taken into immigration custody, however, the ICE Field Office Director granted petitioner

11  a stay of removal until October 13, 2005.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at R95-96, R43,

12  R109, R120).

13       On October 7, 2005, petitioner filed a Petition for Review and a motion for stay of removal

14  with the Ninth Circuit Court of Appeals.  *Okere v. Gonzales*, No. 05-75792 (9th Cir. Oct. 7,

15  2005). Under Ninth Circuit General Order 6.4(c)(1), this cause a temporary stay of removal to

16  automatically issue.  On November 8, 2005, the Fifth Circuit dismissed petitioner's Petition for

17  Review for lack of jurisdiction.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at R127).  On February

18  24, 2006, the Ninth Circuit dismissed petitioner's Petition for Review for lack of jurisdiction,

19  finding that proper venue was in the Fifth Circuit because petitioner's removal proceedings were

20  held before the Immigration Court in Dallas, Texas.  (*Okere*, C06-0292-RSL-JPD, Dkt. #15 at

21  L1234-35); *Okere v. Gonzales*, No. 05-75792 (9th Cir. Oct. 7, 2005).

22       On March 2, 2006, petitioner filed a Petition for Writ of Habeas Corpus in this Court,

REPORT AND RECOMMENDATION
PAGE -5

01 challenging her order of removal.  The Court denied and dismissed the habeas petition on July 28,

02 2006. *See Okere v. Gonzales*, C06-0292-JPD-RSL (W.D. Wash.).  Petitioner then appealed this

03 Court's denial of her habeas petition to the Ninth Circuit Court of Appeals.     *See Okere v.*

04 *Gonzales*, No. 06-35710 (9th Cir. filed Nov. 11, 2006).  Petitioner also requested a stay of

05 removal, which caused a temporary stay of removal to automatically issue. *Id.*  The Ninth Circuit

06 rejected petitioner's Petition for Review and the mandate issued on July 19, 2007. *Id.*

07          On August 15, 2007, petitioner filed the instant habeas petition, seeking release from

08 detention based on her medical condition. (Dkt. #1).  At the same time, petitioner also filed a

09 Motion for Stay of Removal pending review of her habeas petition. (Dkt. #2).  On August 16,

10 2007, the undersigned Magistrate Judge issued a Report and Recommendation ("R&R"),

11 recommending that petitioner's motion for stay of removal be denied because she had failed to

12 demonstrate that she is entitled to health-related release. (Dkt. #5).  The Honorable Ricardo S.

13 Martinez adopted the R&R, denying petitioner's motion for stay of removal. (Dkt. #16).

14                                      III.  DISCUSSION

15          Petitioner requests that she be released on bond because she suffers from medical

16 conditions which are aggravated by her confinement.  Petitioner submitted documentation

17 indicating that she suffers from acute stress disorder, high blood pressure, anxiety, post traumatic

18 stress disorder, and anemia. (Dkt. #1 at 5).  Respondents argue that petitioner is receiving

19 appropriate medical treatment, and that her medical conditions do not warrant release from ICE

20 custody. (Dkt. #18 at 4).  Respondents submitted a Declaration from Philip Farabaugh, M.D.,

21 Clinical Director of the Northwest Detention Center in Tacoma, Washington, who has been

22 treating petitioner. (Dkt. #18, Dkt. #13).  Dr. Farabaugh states,

REPORT AND RECOMMENDATION
PAGE -6

01   5. [Petitioner] suffers from severe anxiety and post traumatic stress disorder related
02   to events in Nigeria as well as the United States.  Because of these psychiatric
     conditions, she has had a very difficult time dealing with the lack of privacy and loss
     of liberty associated with administrative detention while appealing her deportation
03   order.  She is deeply suspicious and fearful of many of the staff and other detainees.

04   6. [Petitioner has been housed temporarily in the medical infirmary during periods of
05   severe anxiety to help her better cope with her detention.  She has been housed in a
     single cell in the female dormitory from February 14, 2006 until April 5, 2006.  It was
     discussed that this would be a temporary arrangement to help her adjust to the
06   detention setting; unfortunately, she continues to have difficulties.  [Petitioner]
     continues to desire a single cell housing which cannot be accommodated due to
07   population constraints in the facility.  She has not been interested in seeing the
     psychiatrist regularly or taking psychiatric medication that could help her better
08   control her anxiety.

09   (Dkt. #13, Declaration of Philip Farabaugh, M.D.; Dkt. #10 at 19, medical note by Dr. Farabaugh

10   ("due to space limitations, special needs for individual room needs to be rescinded. pt has been

11   here 7 months and should be adjusting to setting. will encourage pt to select her own

12   roommate.")).

13   The evidence submitted by respondents and petitioner indicate that petitioner is receiving

14   adequate medical care for her medical problems.  (Dkt. #10 at 9-29; Dkt #13).  Accordingly, no

15   further action is needed by the Court.  Furthermore, "it is a well-settled general principle that a

16   habeas petition is the appropriate means to challenge the 'actual fact or duration' of one's

17   confinement, . . . whereas a civil rights claim is the proper means to challenge the 'conditions' of

18   one's confinement." *Kamara v. Farquharson*, 2 F. Supp. 2d 81, 89 (D. Mass. 1998).  Thus,

19   petitioner's claim that she has received inadequate medical care and treatment is more properly

20   brought as a Bivens action.  *Id.* (noting that a claim of inadequate medical treatment while in

21   custody is ordinarily brought as a civil rights or Bivens action).  Accordingly, petitioner's request

22   that she be released from detention on the basis of her medical conditions should be denied.

REPORT AND RECOMMENDATION
PAGE -7

01   Petitioner also argues for the first time in her Objections to the first Report and

02   Recommendation, Dkt. #10, that she is entitled to release under *Zadvydas v. Davis*, 533 U.S. 678,

03   121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).  As petitioner has not properly raised this argument

04   in either her habeas petition or any other briefing before the undersigned Magistrate Judge, the

05   Court need not address this claim.  Nevertheless, the Court finds that *Zadvydas* does not require

06   petitioner's release.

07   Section 241(a)(1)(A) of the INA states that "[e]xcept as otherwise provided in this section,

08   when an alien is ordered removed, the Attorney General shall remove the alien from the United

09   States within a period of 90 days (in this section referred to as the 'removal period')."  INA §

10   241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A).  S*ee also Thai v. Ashcroft*, 366 F.3d 790, 793 (9th Cir.

11   2004)(citing *Xi v. INS*, 298 F.3d 832, 834-35 (9th Cir. 2002)("When a final order of removal has

12   been entered against an alien, the Government must facilitate that alien's removal within a 90-day

13   'removal period.'").  The removal period begins on the latest of the following:

14   (i) The date the order of removal becomes administratively final.

15   (ii) <u>If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.</u>

16

17   (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

18   8 U.S.C. § 1231(a)(1)(B)(emphasis added); s*ee also Khotesouvan v. Morones*, 386 F.3d 1298,

19   1300 n.3 (9th Cir. 2004) (stating that the 90-day removal period commences on "the date the

20   order of removal becomes final; the date a reviewing court lifts its stay following review and

21   approval of the order of removal; or the date the alien ordered removed is released from non-

22   immigration related confinement.").  During the removal period, continued detention is required.

REPORT AND RECOMMENDATION
PAGE -8

01  INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall

02  detain the alien."). Under Section 241(a)(6), the Attorney General may detain an alien who has

03  been determined by the Attorney General to be a risk to the community or unlikely to comply with

04  a removal order beyond the 90-day removal period. INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

05          In *Zadvydas*, the Supreme Court considered whether this post-removal-period statute, INA

06  § 241(a)(6), authorizes the government "to detain a removable alien *indefinitely* beyond the

07  removal period or only for a period    *reasonably necessary* to secure the alien's removal."

08  *Zadvydas,* 533 U.S. at 682. The petitioners in   *Zadvydas* could not be removed because no

09  country would accept them. Thus, removal was "no longer practically attainable," and the  period

10  of detention at issue was "indefinite" and "potentially permanent." *Id.* at 690-91. The Supreme

11  Court held that INA § 241(a)(6), which permits detention of removable aliens beyond the 90-day

12  removal period, does not permit "indefinite detention." *Id.* at 689-697. The Court explained that

13  "once removal is no longer reasonably foreseeable, continued detention is no longer authorized

14  by statute." *Id.* at 699. The Court further held that detention remains presumptively valid for a

15  period of six months. *Id.* at 701.

16          After this six-month period, an alien is eligible for conditional release upon demonstrating

17  "good reason to believe that there is no significant likelihood of removal in the reasonably

18  foreseeable future." *Id.* at 701. The burden then shifts to the Government to respond with

19  sufficient evidence to rebut that showing. *Id*. at 701. The six-month presumption "does not mean

20  that every alien not removed must be released after six months. To the contrary, an alien may be

21  held in confinement until it has been determined that there is no significant likelihood of removal

22  in the reasonably foreseeable future." *Id.* at 701.

REPORT AND RECOMMENDATION
PAGE -9

01      In the present case, the Ninth Circuit mandate issued on July 19, 2007, thereby

02 commencing the removal period. *See* INA § 241(a)(1)(B)(ii).  Accordingly, petitioner's ninety-

03 day removal period expired on or about October 19, 2007, and the six month presumptively

04 reasonable period will expire on or about January 19, 2008.   As petitioner is within the

05 presumptively valid removal period, her detention is lawful and the Court must deny habeas relief.

06 *See Zadvydas*, 533 U.S. at 701.

07                      IV.  CONCLUSION

08      For the foregoing reasons, I recommend that petitioner's habeas petition, Dkt. #1, be

09 denied and that this action be dismissed with prejudice.  A proposed order accompanies this

10 Report and Recommendation.

11      DATED this 4th day of January, 2008.

12

13                              Mary Alice Theiler
                                 United States Magistrate Judge

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -10